IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PETTUS PROPERTIES, LLC, | ) | CASE NO. 19-80926-CRJ-11 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |

**AMENDED DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF
PETTUS PROPERTIES, LLC
DEBTOR AND DEBTOR-IN-POSSESSION**

**September 24, 2019**

Stuart M. Maples
Mary Ena J. Heath
MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
(256) 489-9779 – Telephone
(256) 489-9720 – Facsímile
$smaples@mapleslawfirmpc.com
mheath@mapleslawfirmpc.com
Attorneys for Debtor-in-Possession

**Solicitation of Votes with Respect to the Chapter 11 Plan**

**of**

**PETTUS PROPERTIES, LLC**

THE MANAGEMENT OF PETTUS PROPERTIES, LLC, DEBTOR AND DEBTOR-IN-POSSESSION (THE "DEBTOR" OR THE "COMPANY"), BELIEVES THAT THE DEBTOR'S CHAPTER 11 PLAN DATED _____ (THE "PLAN"), IS IN THE BEST INTERESTS OF ITS CREDITORS. ALL CREDITORS ARE PROVIDED FOR IN THIS DISCLOSURE STATEMENT. TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED, EXECUTED, AND RECEIVED BY COUNSEL FOR THE DEBTOR, STUART M. MAPLES, MAPLES LAW FIRM, PC, 200 CLINTON AVENUE WEST, SUITE 1000, HUNTSVILLE, ALABAMA, 35801, BEFORE 5:00 P.M. ON _____ (THE "VOTING DEADLINE").

**ALL CREDITORS ARE ENCOURAGED TO READ AND CONSIDER CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT PRIOR TO SUBMITTING BALLOTS PURSUANT TO THIS SOLICITATION. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN AND IS NOT INTENDED TO REPLACE CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN.**

------------------------------------

ALL CAPITALIZED TERMS IN THIS DISCLOSURE STATEMENT NOT OTHERWISE DEFINED HEREIN HAVE THE MEANINGS GIVEN TO THEM IN THE PLAN. THE SUMMARIES OF THE PLAN AND THE OTHER DOCUMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE QUALIFIED BY REFERENCE TO THE PLAN AND SUCH OTHER DOCUMENTS THEMSELVES.

------------------------------------

I.      **INTRODUCTION.**

A.      **Preliminary Statement.**

On March 25, 2019, Pettus Properties, LLC, debtor and debtor-in-possession (the "Debtor"), filed a voluntary Chapter 11 under of the Bankruptcy Code before the United States Bankruptcy Court for the Northern District of Alabama, Northern Division. The Debtor is managing its assets, business and financial affairs as a debtor-in-possession, subject to the supervision of the Bankruptcy Court and the provisions of the Bankruptcy Code.

Case 19-80926-CRJ11    Doc 56    Filed 09/24/19    Entered 09/24/19 15:35:17    Desc Main
Document    Page 2 of 29

As set forth in more detail below, the Plan provides that the Debtor shall be allowed to retain its assets, which are subject to certain liens and interest, of which the Debtor has agreed to pay as provided for in the Plan.

Accompanying this Disclosure Statement are copies of the following:

1. **The Order of the Bankruptcy Court dated** _____, approving this Disclosure Statement and solicitation and voting procedures related to the Plan and setting the hearing on confirmation of the Plan for _____.

2. **The Plan.**

3. **A ballot for accepting or rejecting the Plan.** Ballots are provided to holders of Allowed Claims in Classes 1, 2 and 3 so that they may vote to accept or reject the Plan under the provisions of the Bankruptcy Code. *See* Section I.B.2 ("Voting on the Plan") for additional information regarding ballots and voting procedures.

**B.     Plan Confirmation Process.**

1.     **Approval of Disclosure Statement.**

After notice and a hearing held on _____, by order dated _____, pursuant to § 1125 of the Bankruptcy Code, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor typical of the holders of Claims or Interests in Classes 1, 2, and 3, to make an informed judgment whether to accept or reject the Plan. The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

2.     **Voting on the Plan.**

a.     <u>Who May Vote</u>. Pursuant to § 1126 of the Bankruptcy Code, holders of Allowed Claims or Interests may vote to accept or reject the Plan, provided, however, that (i) the holders of Claims or Interests in classes that are not conclusively impaired under the Plan are presumed to have accepted the Plan and solicitation of acceptances with respect to such classes is not required, and (ii) a class is deemed not to have accepted the Plan if the Plan provides that the Claims or Interests of such class do not entitle the holders of such Claims or Interests to receive or retain any property under the Plan on account of such Claims or Interests. Accordingly, the Debtor is soliciting acceptance of the Plan only from holders of Claims or Interests in the following classes, which are "impaired" under the Plan and are entitled to accept or reject the Plan:

-3-

- Class 1 – Allowed Secured Claims
- Class 2 – Allowed Unsecured Claims
- Class 3 – Equity Interest Holders

Only Persons who hold Claims or Interests in the foregoing impaired classes are entitled to vote to accept or reject the Plan.

**THE DEBTOR BELIEVE THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF HOLDERS OF CLAIMS AND INTERESTS IN ALL IMPAIRED CLASSES. THE DEBTOR RECOMMEND THAT ALL PERSONS ENTITLED TO VOTE CAST A BALLOT TO ACCEPT THE PLAN.**

    b.    <u>Deadline for Voting</u>. The Bankruptcy Court has fixed 5:00 p.m. (Central Time) on _____, as the deadline for voting. To be counted, all ballots must be completed and received, as set forth below, before the Voting Deadline.

    c.    <u>Voting Procedures</u>. Holders of Claims in Classes 1, 2 and 3 should complete and sign the enclosed Ballot and deliver it by mail, hand or overnight delivery to:

Stuart M. Maples
Maples Law Firm, PC
200 Clinton Ave. W., Suite 200
Huntsville, Alabama 35801

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED BY THE VOTING DEADLINE OF 5:00 P.M. CENTRAL TIME ON _____. You must ensure the receipt of the ballot before the Voting Deadline. Ballots received after the Voting Deadline will not be counted.**

    d.    <u>Significance of Voting</u>. The vote for each holder of a claim in an impaired class is important. Acceptance by each impaired class of claims is a condition to confirmation of the Plan on a consensual basis. The Bankruptcy Code defines "acceptance" of a plan by a class of creditors as acceptance by holders of two-thirds in dollar amount and more than one-half in number of the claims of that class that actually cast ballots for acceptance or rejection of the Plan. If a class or classes of impaired Claims does not accept the Plan, the Debtor has required confirmation of the Plan under the "cram down" provisions of § 1129(b) of the Bankruptcy Code, which permits confirmation, notwithstanding non-acceptance by one or more impaired classes, if the Plan does not discriminate unfairly and is "fair and equitable" with respect to each non-accepting class. **THESE CALCULATIONS ARE BASED ONLY ON THE CLAIM AMOUNTS AND NUMBER OF CREDITORS WHO ACTUALLY VOTE. THE VOTE OF EACH CREDITOR IS IMPORTANT.**

Case 19-80926-CRJ11    Doc 56    Filed 09/24/19    Entered 09/24/19 15:35:17    Desc Main
Document    Page 4 of 29

The Debtor will prepare and file with the Court a certification of the results of the balloting with respect to the Plan. **ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED, NOR WILL ANY BALLOTS RECEIVED BY FACSIMILE BE ACCEPTED.**

### 3. Confirmation Hearing.

Pursuant to § 1128 of the Bankruptcy Code, the Bankruptcy Court shall schedule a confirmation hearing to consider confirmation of the Plan.

At the Confirmation Hearing, the Court will (i) determine whether the requisite vote has been obtained for each Class, (ii) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, (iii) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, and (iv) determine whether to confirm the Plan.

Any objection to confirmation of the Plan must be in writing and filed and served as required by the Court pursuant to the Order Approving Disclosure Statement. **Specifically, all objections to the confirmation of the Plan must be served in a manner so as to be received on or before _____, at 5:00 p.m. (Central Time) by:**

        a.      <u>Clerk of the Court</u>, United States Bankruptcy Court, 400 Wells Street, P.O. Box 3045, Decatur, Alabama, 35602.

        b.      <u>Counsel to the Debtor</u>, Stuart M. Maples, Maples Law Firm, PC, 200 Clinton Ave. West, Suite 1000, Huntsville, Alabama, 35801; and

        c.      <u>Richard Blythe</u>, Office of the Bankruptcy Administrator, 400 Wells Street, P.O. Box 3045, Decatur, Alabama, 35602.

## II.    BUSINESS AND HISTORY OF DEBTOR.

### A.    Company Structure.

The Debtor is an Alabama LLC with two Members--Don Pettus and Patricia Pettus.

### B.    Overview of Debtor's Business.

The Debtor owns real estate located in Hartselle, Alabama, which properties are currently leased to various tenants.

-5-

C.    **History.**

The Debtor organized as an LLC in 2001 and has operated as a leasing/property management company since that time. It currently owns and operates five properties.

D.    **Assets.**

Schedule A/B, filed in this matter and incorporated into Exhibit A, accurately reflects the assets of the Debtor.

E.    **Debt Structure.**

1.    **Administrative Expense Claims.**

At Confirmation, the Debtor anticipates administrative expense claims allowable under the Plan by Maples Law Firm, P.C., in the approximate amount of $20,645.00.

All Administrative Claims are Unclassified.

2.    **Tax Claims.**  None.

3.    **Allowed Secured Claims.**

The Debtor currently has one (1) secured lender:  National Loan Investors, L.P. for a mortgage and Promissory Note dated June 1, 2015.  The Creditor states that the current balance as of the Petition Date is $439,733.74, with interest accruing at 5.00%, per annum.  The Debtor is contemplating filing an objection to the amount of this claim, which is set out in the Petition as $264,000.00.

The Plan places this Secured Claim in Class 1.

4.    **Summary of Unsecured Debt for Distribution Purposes Under the Plan.**

The Plan places all Unsecured Claims in Class 2.  The total amount of these claims is $16,000.00.

The Debtor reserves all rights, claims and defenses with respect to the allowance, amount and classification of all claims.  Moreover, some of the claims are disputed or unliquidated. Additional claims may be unknown to the Debtor.  The Debtor reserves all rights and make no representation or warranty as to the amount of Allowed Claims.

-6-

F.      **Potential Claims of Debtor.**

The Debtor is currently unaware of any potential claims they may have against any entity.

## III.      EVENTS LEADING TO CHAPTER 11.

Debtor had fallen behind on its financial obligations to National Loan Investors, L.P. The Debtor listed some of its real estate holdings for sale and had a potential buyer. This sale did not go through, which resulted in the inability of the Debtor to maintain current payments to National Loan Investors, L.P. A foreclosure by National Loan Investors, L.P was scheduled for March 26, 2019. Debtor filed for Chapter 11 March 25, 2019.

## IV.      CHAPTER 11 PROCEEDINGS.

**Post-Filing Operations.** After filing this Chapter 11 case, the Debtor has operated its business and managed its assets and affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. The Debtor will file monthly reports with the Bankruptcy Court summarizing its post-filing operating results.

## V.      SUMMARY OF PLAN.

NOTE: The following is a summary of the Plan. Read the Plan itself for a full disclosure of its contents. The following summary is provided for convenience only and is not intended as a complete statement of the terms of the Plan. If the summary conflicts in any way with the Plan, the terms of the Plan shall control. **REFERENCE TO THE PLAN IS NECESSARY FOR A FULL UNDERSTANDING OF ITS TERMS.**

A.      **Overview.** The Plan provides for the payment of secured and unsecured debt.

B.      **Disclosure of Unclassified Claims.**

1.      **Administrative Expense Claims.** This class shall consist of all administrative expense claims of the Debtor's Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code. This class is divided into the following sub-classes:

**Maples Law Firm, P.C.:** Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C. relating to the firm's representation of the Debtor in Bankruptcy. These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid either upon the Effective Date of the Plan or in a manner agreed upon by the Debtor and Maples Law Firm. The amount of professional compensation due at confirmation is estimated to be approximately $20,645.00.

2.      **Tax Claims** – None.

### C. Unimpaired Classes

All classes of claims are impaired under the Plan.

### D. Impaired Classes

**Class 1 – Allowed Secured Claims.**

Class 1 shall consist of the Allowed Secured Claim of National Loan Investors, L.P. A proof of claim has been filed for $439,733.74, accruing interest at 5.00%, per annum. The Debtor is contemplating filing an objection to the amount of this claim.

**Class 2 - Allowed Unsecured Claims.**

Class 2 shall consist of the Allowed Unsecured Claims of all other unsecured creditors.

**Class 3 – Equity Interest Holders.**

Class 3 shall consist of the equity position of Members Don Pettus and Patricia Pettus in the Debtor.

## VI. IMPAIRMENT AND TREATMENT OF CLASSES UNDER THE PLAN

### A. Treatment of Unclassified Claims.

1. **Administrative Expense Claims:** This class shall consist of all administrative expense claims of the Debtor' Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code. This class is divided into the following sub-classes:

   **Maples Law Firm, P.C.:** Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C. relating to the firm's representation of the Debtor in Bankruptcy. These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid either upon the Effective Date of the Plan or in a manner agreed upon by the Debtor and Maples Law Firm. The amount of professional compensation due at confirmation is estimated to be approximately $20,645.00.

2. **Tax Claims:** None

-8-

**B.    Treatment of Impaired Classes.**  The treatment of all Claims and Interests shall be in accordance with the Plan.

### Class 1 – Secured Claims.

Class 1 shall consist of the Allowed Secured Claim of National Loan Investors, L.P. in the amount of $439,733.74.  Debtor is contemplating filing an objection to the amount of this Claim.  Debtor seeks to reduce the interest rate on this Claim from 5.00% to 4.00%, per annum.  Class 1 shall be paid through interest-only payments for eighteen (18) months in the amount of $1,465.78, commencing on the Effective Date of the Plan.  This payment will be paid direct by the Debtor.  Any other income after expenses will be used to repair the property and market it for sale, following which Debtor will apply the proceeds to payment of the debt to National Loan Investors, L.P.

### Class 2 – Allowed Unsecured Claims.

Class 2 consists of the Allowed Unsecured Claims of all other unsecured creditors. The Allowed Unsecured Claims of the unsecured creditors will be paid from fifty percent (50%) of the Net Plan Profits (as defined in the Plan) of Debtor for five (5) years or until paid in full.  However, if unsecured debts are not paid in full by the end of year five (5), any remaining balance will balloon at the end of year six (6) and be due and payable by the Debtor at that time.

### Class 3 – Equity Interest Holders.

Class 3 shall consist of the equity position of Members Don Pettus and Patricia Pettus in the Debtor. The Members, or their assigns, will receive no equity distribution (other than salary) unless and until Class 2 is paid in full.

## V.    IMPLEMENTATION OF THE PLAN

**A.    Means of Executing the Plan.**

**1.**    The Debtor proposes to implement the Plan as follows:

a.    Service the debt by making the payments as they are set out in the Plan.

b.    Alternatively, Debtor will market and sell the real property to an unrelated third party with a view to liquidate parcels of the property within the next eighteen (18) months and continue liquidating until the secured debt is paid in full. This sale, if agreed upon, is anticipated to be accomplished pursuant to § 363(f) of the Bankruptcy Code.

**2.    Management.**  The Debtor shall continue to manage its affairs through

-9-

Patricia Pettus.

      **3.**      **Creditors' Committee.**  No creditors' committee was formed in this matter.  Operating reports will continue and shall be available to the creditors until the Plan is substantially consummated and the case is closed.

      **4.**      **Disbursing Agent.**  Patricia Pettus shall be the Disbursing Agent.

      **5.**      ***De Minimis* Distributions.**  Notwithstanding anything to the contrary contained in the Plan, the Debtor shall not be required to transmit Cash to the holder of an Allowed Claim in an impaired class of claims if the amount of Cash otherwise due is less than $10.00.  All Cash not so distributed shall be deposited into the Unpaid Claims Reserve, and such Cash shall become the sole and exclusive property of the Debtor.

**B.**      **Treatment of Executory Contracts and Unexpired Leases.**

      The Debtor intends to assume the current leases of the tenants for its properties. Pursuant to § 1123(b)(2) of the Bankruptcy Code, except for those executory contracts and unexpired leases, if any, assumed pursuant to the Plan or as to which the Debtor has filed prior to the Confirmation Date a motion to assume and assign or a motion to reject, all executory contracts and unexpired leases to which the Debtor is or was a party and not previously rejected or assumed and assigned pursuant to prior order of the Bankruptcy Court, including, without limitation, all executive and employee severance, vacation, benefit and retirement plans, contracts and agreements (including, but not limited to all stay or retention programs, incentive plans, accelerated vesting plans, accelerated benefit plans, and any other plan, agreement, contract or document relating to or providing for payments to executives or employees not part of recurring salaries and wages), are deemed rejected pursuant to § 364(a) of the Bankruptcy Code as of the Effective Date.

      Each party to an executory contract or unexpired lease rejected pursuant to the Plan (and only such entities) asserting a claim for damages arising from such rejection shall file, not later than thirty (30) days following the Confirmation Date, a proof of such Claim; *provided, however,* that (1) the Bar Date established for rejection damages claims in this Section of the Plan shall not apply to Persons that may assert a Claim on account of an executory contract or unexpired lease that was rejected by the Debtor before Confirmation for which a prior Bar Date was established; and (2) any Person asserting a claim for rejection damages that does not timely file a proof of claim in accordance with the Plan shall be forever enjoined and barred from asserting such Claim against the Debtor, the Estate or any property of the Estate.

**C.**      **Provisions Governing Distributions.**

      **1.**      **Procedure for Determination of Claims.**

      a.      <u>Objections to Claims</u>.  Notwithstanding the occurrence of the Confirmation Date, and except as to any Claim that has been Allowed prior to such

-10-

date or pursuant to this Plan, the Debtor, or any other Person authorized under § 502(a) of the Bankruptcy Code, may object to the allowance of any Claim against the Debtor or seek estimation thereof on any grounds permitted by the Bankruptcy Code; provided, however, that after the Effective Date the Bankruptcy Court shall have exclusive authority and responsibility to prosecute objections to Claims.

        b.    <u>Disputed Claims</u>.  Payments or Distributions under the Plan on account of disputed claims shall be held in reserve pending the allowance or disallowance of the Claim.  To the extent any property is distributed to an entity on account of a Claim that is not an Allowed Claim, such property shall promptly be returned to the Disbursing Agent for deposit in the Unpaid Claims Reserve.  To the extent that a disputed claim ultimately becomes an Allowed Claim, payments and distributions on account of such Allowed Claim shall be made in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Code allowing such Claim becomes a Final Order, any property held in reserve as pursuant to the Plan that would have been distributed prior to the date on which a disputed claim becomes an Allowed Claim shall be distributed, together with any dividends, payments or other distributions made on account of such property from the date such distributions would have been due had such Claim then been an Allowed Claim to the date such distributions are made.

## D.    Distributions.

        **1.**    **<u>Undeliverable Distributions</u>.**  Except as otherwise provided herein, distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth on the respective proofs of Claim filed by such holders; (b) at the addresses set forth in any written notice of address change delivered to the Debtor after the date of the filing of any related proof of Claim; or (c) at the address reflected in the Schedules or the Debtor's records if no proof of Claim has been filed and if the Debtor has not received written notice of a change of address, as set forth herein.  If a distribution is returned as undeliverable, the maker of such distribution shall hold such distribution and shall not be required to take any further action with respect to the delivery of the distribution unless and until the earlier of (1) the date on which Debtor is notified in writing of the then current address of the holder entitled to receive the distribution or (2) within six (6) months from the first payment due on the Unsecured Claims, except as the Bankruptcy Court may otherwise order.  If the Disbursing Agent is notified in writing of the then current address of the holder before the expiration of the six (6) month period, the Disbursing Agent shall promptly make the distribution required by the Plan to the holder at the then current address.  If the Disbursing Agent is not so notified by the end of the six (6) month period, and the holder of the Claim does not by such date assert a right to such undeliverable distribution, the holder shall be forever barred from asserting a Claim to such undeliverable distribution, which shall become available for distribution to holders of other Allowed Claims as provided in the Plan.

2. **Manner of Payment.** Distributions by the Disbursing Agent may be made, at the option of the Disbursing Agent, in cash, by wire transfer, or by check drawn on such accounts established by the Disbursing Agent as necessary to effectuate the Plan.

3. **Interest.** Unless otherwise required by Final Order of the Bankruptcy Court or applicable bankruptcy law, interest shall not accrue or be paid after the Filing Date on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Filing Date on any Claim.

4. **Fractional Dollars; *De Minimis* Distributions.**

   a. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

   b. No interim distribution will be made on account of any Allowed Class 2 Claim to the holder of any such Allowed Class 2 Claim if the amount of such distribution for the Allowed Claim is less than $10.00. Immediately before the last distribution date on Unsecured Claims, the Disbursing Agent shall (i) aggregate the amount of all distributions that would have been made on account of an Allowed Claim but for this *de minimis* provision and (ii) on the last distribution date, make a distribution on account of such Allowed Claim in accordance with the Plan.

5. **Distributions on Claims Allowed Pursuant to Section 502(h) of the Bankruptcy Code.** Except as otherwise provided in the Plan, no distributions shall be made on account of a Claim arising as a result of a Final Order entered in an avoidance action until such Claim becomes an Allowed Claim. Any Claim that is allowed pursuant to § 502(h) of the Bankruptcy Code prior to the first distribution date as a result of the entry of a Final Order in any avoidance action will be treated in accordance with the provisions of the Plan. All holders of such Claims that become Allowed Claims after the first distribution date will receive an initial distribution on the distribution date next following the date on which their Claim becomes an Allowed Claim and shall receive subsequent distributions, if any, in accordance with the provisions of the Plan. Distributions under the Plan on account of anticipated Claims that may arise or become allowable as a result of the entry of a Final Order in any avoidance action that are not Allowed Claims as of the first distribution date may be held in reserve, at the discretion of the Disbursing Agent, pending the allowance of disallowance of such Claims.

6. **Disbursing Agent's Compliance with Tax Requirements.** In compliance with § 346 of the Bankruptcy Code, to the extent applicable, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making distributions pursuant to the Plan. The Disbursing Agent shall be authorized to take any and all action necessary and appropriate to comply with such requirements. As a condition to making any distribution under the Plan, the Disbursing Agent may require the holder of an Allowed Claim to provide such

holder's taxpayer identification number, and such other information, certification or forms as necessary to comply with applicable tax reporting and withholding laws. Notwithstanding any other provision of this Plan, each entity receiving a distribution of dash pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of any such distribution.

7. **Reserve for Disputed Claims.** Except as otherwise provided in the Plan, no distributions shall be made on account of a disputed claim until such claim becomes an Allowed Claim. In making any distribution on Allowed Claims, the Disbursing Agent shall calculate the amount of such distribution (for purposes of making a Pro Rata calculation) as if each disputed claim were an Allowed Claim, unless the Bankruptcy Court enters an order specifying that the disputed claim should be treated as being a different amount for purposes of such calculation. The Disbursing Agent shall reserve from distributions a sufficient amount to make a distribution on a disputed claim in the event it becomes an Allowed Claim (unless the Bankruptcy Court orders otherwise). To the extent a disputed claim is allowed pursuant to a Final Order, any reserves attributable to the disallowed portion of the disputed claim shall be distributed on account of Allowed Claims pursuant to the terms of the Plan.

8. **Setoffs.** Subject to § 553 of the Bankruptcy Code, in the event the Debtor has a claim of any nature whatsoever against a holder of a Claim, the Disbursing Agent may, but is not required to, set off the Debtor's claim against such Claim (and any distributions or other rights to receive property arising out of such Claim under the Plan) unless any such claim of the Debtor is or will be released under the Plan. Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any claim of the Debtor.

9. **Reliance on Claims Register.** In making distributions under the Plan, the Disbursing Agent may rely upon the accuracy of the claims register maintained by the Bankruptcy Court or its designee as claims agent in the case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

E.     **Reservation of the Rights of the Estate.**

All claims, rights to payment, causes of action, cross-claims and counterclaims of the Debtor of any kind or nature whatsoever including, without limitation, causes of action and avoidance actions, against third parties arising before the Confirmation Date that have not been disposed of prior to the Effective Date shall be preserved and treated in accordance with the Plan. Without limitation of the foregoing, pursuant to § 1123(b) of the Bankruptcy Code, the Debtor shall enforce, for the benefit of the holders of Allowed Class 2 Claims (a) the causes of action and avoidance actions; (b) all Claims, causes of action, and related recoveries against any person; and (c) all other claims, rights to payment and causes of action, cross claims and counterclaims of any nature or type whatsoever, at law or in equity, against any person.

-13-

# VII.   TAX CONSEQUENCES OF PLAN.

The following summary discusses the material federal income tax consequences expected to result from the consummation of the Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "Tax Code'), applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"). There can be no assurance that the IRS will not take a contrary view, and no ruling from the IRS has been or will be sought by the Debtor or his advisors. Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to, among others, the Debtor and the holders of Claims.

The following summary is for general information only. The federal income tax consequences of the Plan are complex and subject to significant uncertainties. This summary does not address foreign, state or local tax consequences of the Plan, nor does it purport to address all of the federal income tax consequences of the Plan. This summary does not purport to address the federal income tax consequences of the Plan to taxpayers subject to special treatment under the federal income tax laws, such as broker-dealers, tax-exempt entities, financial institutions, insurance companies, S corporations, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and non-resident alien individuals. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE POTENTIAL FEDERAL, STATE, LOCAL OR FOREIGN TAX CONSEQUENCES OF THE PLAN.

### A.   Federal Income Tax Consequences to the Debtor.

NOTHING STATED IN THE DISCUSSION WHICH FOLLOWS IS OR SHOULD BE CONSTRUED AS TAX ADVICE TO ANY CREDITOR OF THE DEBTOR. CREDITORS SHOULD CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF THE PLAN.

The statements contained in this portion of the Disclosure Statement are based on existing provisions of the Internal Revenue Code of 1986, as amended ("Code"), Treasury Regulations promulgated thereunder, existing court decisions, published Revenue Rulings, Revenue Procedures and Technical Information Releases of the Internal Revenue Service ("IRS"), and legislative history. Any changes in existing law may be retroactive, may affect transactions commenced or completed prior to the effective date of the changes, and may significantly modify this discussion.

Legislation may be introduced in future sessions of Congress which could eliminate or alter some of the anticipated tax results of the Plan. No attempt has been made to evaluate in any detail the impact, which may be substantial, of any proposed legislation on the Plan.

The following is intended to be only a summary of certain tax considerations under current law which may be relevant to the creditors of the Debtor. It is impractical to set forth in this

-14-

Disclosure Statement all aspects of federal, state, and local tax law which may have tax consequences to the Debtor and his creditors.

Some of the tax aspects discussed herein are complex and uncertain. Moreover, the discussion below is necessarily general, and the full tax impact of the Plan upon the creditors will vary depending upon each creditor's individual circumstances. Therefore, all the creditors should satisfy themselves as to the federal, state and local tax consequences of the Plan by obtaining advice solely from their own advisors.

THE CREDITORS SHOULD NOT CONSIDER THE DISCUSSION WHICH FOLLOWS TO BE A SUBSTITUTE FOR CAREFUL, INDIVIDUAL TAX PLANNING AND ARE EXPRESSLY CAUTIONED THAT THE INCOME TAX CONSEQUENCES TO THE CREDITORS ARE COMPLEX AND VARY CONSIDERABLY DEPENDING UPON EACH PARTY'S CIRCUMSTANCES. ACCORDINGLY, CREDITORS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS WITH REGARD TO THEIR PARTICULAR TAX SITUATIONS.

1. **The Plan.** The terms of the Plan provide for payment provisions which should be analyzed individually for each Creditor with its tax advisor.

2. **Creditors.**

    a. To the extent that Creditors receive payments under the Plan as interest, such Creditors will recognize interest income under § 51(a)(4) of the Code.

    b. To the extent that, pursuant to the Plan, creditors receive cash payments from the Debtor in satisfaction of their claims, such creditors may recognize gain or loss, as the case may be, equal to the difference between the amount of the cash so received and their adjusted basis in such claim.

    c. The gain or loss to be recognized by such creditors will be either ordinary income or capital gain depending on, among other factors, the status of the creditor and the nature of Claim in the hands of the creditor. While capital gains and ordinary income are presently taxed at the same rates, §§ 1211 and 1212 of the Code limit the ability to offset net capital losses against ordinary income.

3. **Bad Debt Deduction.** Section 166 of the Code permits the deduction of debts which have become totally or partially worthless. Therefore, to the extent that certain creditors will receive less than full payment from the Debtor with respect to the debt owed such creditors, such creditors may be able to deduct such bad debts for federal income tax purposes. The nature of the deduction for a bad debt depends on its classification as either a business or non-business debt. For non-corporate taxpayers, non-business bad debts are deductible as short-term capital losses, and so are subject to the limitations on deductibility of capital losses under §§ 1211 and 1212 of the Code. Business bad debts and bad debts held by corporate taxpayers are deductible as ordinary losses. A bad debt is deductible to

-15-

a creditor at the time it becomes wholly or partially worthless determined under the particular facts and circumstances.

**4.** **Income from the Discharge of Indebtedness.** As a general rule, § 61(a)(12) of the Code, requires that gross income for federal income tax purposes include income from the discharge of indebtedness. However, § 108(a)(1) of the Code, specifically excludes discharge of indebtedness income from gross income if the discharge occurs in a Title 11 (bankruptcy) case. Therefore, the Debtor will not recognize income on the discharge of indebtedness pursuant to the Plan.

Section 108(b) of the Code does, however, provide that the amount excluded from gross income under § 108(a)(1) must be applied to reduce, in order, the following tax attributes of the Debtor: (a) net operating losses and net operating loss carryovers; (b) general business credits; (c) capital loss carryovers; (d) the basis of the property of the taxpayer (but not below the aggregate liabilities of the taxpayer after the discharge, pursuant to § 1017(b)(2) of the Code); and (e) foreign tax credit carryovers.

Alternatively, the Debtor may elect, under § 108(b)(5) of the Code, to apply any portion of the reduction referred to above to a reduction of the taxpayer's basis in depreciable property and real estate held for sale in the ordinary course of business.

The effect of the reduction of tax attributes is to defer the recognition of income on the discharge of indebtedness income until such time as the reduced tax attribute would have otherwise been available to the Debtor to decrease taxable income.

**5.** **State and Local Taxes.** In addition to the federal income tax consequences described above, Creditors should consider potential state and local tax consequences which are not discussed herein. In general, the State of Alabama imposes a tax against income of residents and non-residents of Alabama who have income from sources within the state of Alabama. The Alabama income tax is imposed on taxable income at a graduated rate of up to five percent (5%).

THE FOREGOING ANALYSIS IS NOT INTENDED TO BE A SUBSTITUTE FOR CAREFUL TAX PLANNING, PARTICULARLY SINCE CERTAIN OF THE INCOME TAX CONSEQUENCES OF THE PLAN WILL NOT BE THE SAME FOR ALL CREDITORS, DUE TO THEIR RESPECTIVE DIFFERING SOURCES AND TYPES OF INCOME AND DEDUCTIONS, AND OTHER FACTORS. ACCORDINGLY, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS WITH REFERENCE TO THEIR OWN TAX SITUATION.

**VIII.** **PLAN CONFIRMATION PROCESS.**

**A.** **Confirmation.**

At the Confirmation Hearing, the Bankruptcy Court shall confirm the Plan if the Plan satisfies all requirements of § 1129(a) include the following: (1) the Plan must be accepted by all

-16-

impaired classes, (2) the Plan must be feasible, and (3) with respect to each holder of a Claim or Interest that does not vote to accept the Plan (even if such holder is a member of a Class that as a whole votes to accept the Plan), the Plan must be in the "best interests" of such holder in that the Plan provides for a distribution to the holder that is not less than the amount such holder would receive in a hypothetical Chapter 7 liquidation of the Debtor. With respect to the requirement that each impaired class votes to accept the Plan, § 1129(b) provides that if all other requirements of § 1129(a) are satisfied, the Plan still may be confirmed if the Plan, with respect to each impaired class that does not accept the Plan, "does not discriminate unfairly" and is "fair and equitable" with respect to such class. The acceptance, feasibility, unfair discrimination and fair and equitable concepts are discussed in more detail below.

**B.      Acceptance of Plan by Voting.**

For the Plan to be accepted by an impaired class of claims, it must be accepted by holders of Claims in such Class that hold at least two-thirds in dollar amount and one-half in number of the Claims in such Class held by creditors that actually vote. A Class is impaired if the legal, equitable, or contractual rights of the members of such class are modified or altered by the Plan (with an exception, not applicable to the Plan, for curing defaults, reinstating maturity and compensating certain damages). Classes 1, 2 and 3 in this Plan are impaired and entitled to vote.

If any impaired Class does not accept the Plan, and at least one impaired Class accepts the Plan, the Debtor may seek confirmation of the Plan under the "cram down" provisions of § 1129(b) of the Bankruptcy Code. To obtain confirmation despite non-acceptance by one or more impaired Classes, the Debtor must show to the Bankruptcy Court that the Plan does not discriminate unfairly and is fair and equitable with respect to each such Class. Each of these requirements is discussed further, as follows:

      **1.      Unfair Discrimination.** A plan does not discriminate unfairly with respect to a non-accepting Class if it protects the rights of such Class in a manner consistent with the treatment of other Classes with similar rights. The unfair discrimination test does not require that similarly situated Classes be treated in exactly the same way. The test requires that such Classes be treated substantially similarly *or* if not treated substantially similarly, that differences in treatment be fair.

      **2.      Fair and Equitable.** A plan does not discriminate unfairly if either (a) each holder of a Claim or Interest in the non-accepting Class receives or retains under the Plan property of a value equal to the Allowed amount of such Claim or Interest; or (b) the holders of Claims or Interests that are junior to such Class receive or retain nothing under the Plan on account of such Claims or Interests (the "Absolute Priority Rule").

**C.      Feasibility.**

As a condition to confirmation of the Plan, § 1129(a) of the Bankruptcy Code requires that Confirmation is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization. The Plan provides for reorganization of the Debtor's assets. The Debtor is not likely to need further financial reorganization. Accordingly,

the Plan is feasible and the Debtor can demonstrate that the Plan is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization of the Debtor. The cost savings alone provided for by the Plan is a net $15,642.33 per month which will be more than sufficient to fund the Plan.

**D.    Best Interests of Creditors Test.**

      **1.    Overview.**  Confirmation requires that each holder of an Allowed Claim and Interest that is included in an Impaired Class (a) accept the Plan or (b) receive or retain under the Plan, property of a value, as of the Effective Date of the Plan, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. This requirement applies to all dissenting or non-voting members of impaired Classes, even with respect to a Class that has accepted the Plan.

      To determine what holders of Claims and Interests would receive in a hypothetical Chapter 7 liquidation, the Bankruptcy Court will consider the dollar amount that would be generated in a straight liquidation of the Debtor's assets and properties. Such amount would be reduced by the costs and expenses of liquidation by additional administrative expense claims that would accrue in Chapter 7. Chapter 7 costs and expenses would include, without limitation, (a) statutory fees payable to the Chapter 7 trustee pursuant to § 326 of the Bankruptcy Code; (b) fees payable to attorneys, accountants, auctioneers, liquidators and other professional advisors that the Chapter 7 Trustee would engage to assist in discharging his duties under the Bankruptcy Code; and (c) any unpaid expenses incurred by the Debtor during the case, such as unpaid vendor invoices and fees and reimbursement of expenses of attorneys, accountants and other professional advisors retained by the Debtor or statutory committees or any party asserting a substantial contribution claim under § 503(b)(3) of the Bankruptcy Code.

      Based on the foregoing, holders of Allowed Claims and Interests in Class 1 would not receive full distribution in Chapter 7, and Class 2 would likely receive no distributions. The Plan also provides for payment of priority and administrative claims that would be payable from the proceeds of causes of action before any distribution to Unsecured Claims. The Plan, therefore, provides for distributions not less than the value that such holders would receive in Chapter 7.

      Accordingly, the Plan meets the best interests of creditors test with respect to all holders of Claims and Interests. The Debtor believe the Plan will maximize the potential return to all parties in interest.

      There are no known avoidance actions.

      Based on the foregoing, the Debtor has concluded that reorganization under the Plan will result in a greater distribution to holders of all classes than liquidation through Chapter 7.

Case 19-80926-CRJ11    Doc 56    Filed 09/24/19    Entered 09/24/19 15:35:17    Desc Main
Document    Page 18 of 29

IX.    ALTERNATIVES TO PLAN.

As an alternative to confirming the Plan, the Bankruptcy Court could convert the case to a case under Chapter 7 of the Bankruptcy Code, dismiss the case, or consider another Chapter 11 plan.

A.    Liquidation under Chapter 7.

If the Plan is not confirmed, and no other alternative plan is proposed, the Bankruptcy Court could find cause to convert the case to a case under Chapter 7 of the Bankruptcy Code. In Chapter 7, a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to the Debtor's creditors in accordance with the priorities established by the Bankruptcy Code.

The Debtor believes that conversion of the case to a case under Chapter 7 of the Bankruptcy Code would result in lower distributions to all Creditors. Substantially all assets of the Debtor, with the exception of the avoidance actions, are subject to liens of the holder of the Secured Claim (the "Secured Party"). In a Chapter 7 case, the Secured Party likely would be able to obtain relief from automatic stay under § 362(d) to foreclose on its liens. In this event, essentially no assets, other than avoidance actions, would remain to satisfy the claims of creditors other than the Secured Party.

As disclosed on the Debtor's Summary of Assets and Liabilities, a copy of which is attached hereto as Exhibit B (except for the amount of the Secured Creditor National Loan Investors, L.P. the claim of which is supported by their Proof of Claim which is attached hereto as Exhibit B-1), the total assets of the Debtor are $471,095.00 and the total liabilities are $455,733.74.

Conversion to Chapter 7 would result in a No Asset Case.

Based on the foregoing, the Debtor believe that holders of Claims and Interests would receive a lower distribution on account of such Claims and Interests if the case were converted to Chapter 7.

B.    Comparison of Plan.

The Debtor is of the opinion that the proposed Plan provides more for each class of creditors and represents the statutorily mandated payment of priority claims.

C.    Dismissal of Case.

Dismissal of the case likely would have a disastrous result on the value of the Debtor's assets and the return to holders of Claims and Interests. Without limitation, dismissal of the case would terminate the automatic stay and allow the Secured Creditor to immediately foreclose its liens on substantially all of the Debtor's assets. Moreover, dismissal of the case would leave the Debtor without sufficient funding to preserve assets pending their liquidation. Dismissal also would terminate all means for the repayment of Unsecured Creditors under the Plan. In summary,

-19-

dismissal of the Case would drastically reduce the value of the Debtor's assets, would lower the return to the Secured Creditor, and essentially would eliminate any return to holders of other Claims and Interests. The Debtor believes that dismissal of the case is not a viable alternative to the Plan.

### D. Alternative Chapter 11 Plan.

If the Plan is not confirmed, the Debtor and other parties in interest, including, without limitation, holders of Claims and Interests and any official statutory committee, could propose an alternative plan. The Debtor believes, however, that the Plan will provide the greatest and most expeditious return to holders of Claims and Interests. Because the Claim of the Secured Party exceed the expected liquidation value of the Debtor's assets, an alternative plan would not likely provide for any distributions to parties other than the Secured Party. The formulation, negotiation, and confirmation of an alternative plan also would delay significantly the administration of the Debtor's case and would have a negative impact on the Debtor's ability to reorganize. Under the circumstances, the Debtor submits that confirmation of an alternative plan is unlikely on terms and conditions as favorable to holders of Claims and Interests as those in the Plan.

## X. CONCLUSION/RECOMMENDATION.

Based on the foregoing, the Debtor believes that the Plan is the best alternative to maximize the value of the Debtor's assets and to maximize the return to creditors and equity security holders. The Debtor believes confirmation of the Plan is in the best interests of all parties in interest in the case.

The Debtor recommends that all parties entitled to cast ballots vote to ACCEPT the Plan.

Respectfully submitted September 24, 2019.

Debtor and Debtor-in-Possession

PETTUS PROPERTIES, LLC

*/s/ Patricia Pettus*
PATRICIA PETTUS, MEMBER

*/s/ Stuart M. Maples*
STUART M. MAPLES

*/s/ Mary Ena J. Heath*
MARY ENA J. HEATH

MAPLES LAW FIRM, PC
200 Clinton Ave. W, Suite 1000
Huntsville, Alabama 35801
(256) 489-9779 - Telephone
smaples@mapleslawfirmpc.com
mheath@mapleslawfirmpc.com
Attorneys for the Debtor

-20-



# EXHIBIT A

03/25/19 1:17PM

**Fill in this information to identify the case:**

Debtor name: **Pettus Properties, LLC**

United States Bankruptcy Court for the: NORTHERN DISTRICT OF ALABAMA

Case number (if known): _____

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property  12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1. **Does the debtor have any cash or cash equivalents?**

☑ No. Go to Part 2.
☐ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

| Part 2: | Deposits and Prepayments |
|---|---|

6. **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

10. **Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

13. **Does the debtor own any investments?**

☑ No. Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

---

Official Form 206A/B    Schedule A/B Assets - Real and Personal Property    page 1

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor  **Pettus Properties, LLC**                    Case number (If known) _____
         Name

☐ Yes Fill in the information below.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.  Go to Part 9.
■ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|
| **47.** **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1.  1998 Ford Clubwagon XLT | $1,400.00 | Comparable sale | $1,400.00 |
| 47.2.  1994 Ford Truck F150 | $1,600.00 | Comparable sale | $1,600.00 |

48.  **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors,
      floating homes, personal watercraft, and fishing vessels

49.  **Aircraft and accessories**

50.  **Other machinery, fixtures, and equipment (excluding farm
      machinery and equipment)**

51.  **Total of Part 8.**                                                    $3,000.00
      Add lines 47 through 50.  Copy the total to line 87.

52.  **Is a depreciation schedule available for any of the property listed in Part 8?**
      ■ No
      ☐ Yes

53.  **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
      ■ No
      ☐ Yes

| Part 9: | Real property |
|---|---|

**54. Does the debtor own or lease any real property?**

☐ No.  Go to Part 10.
■ Yes Fill in the information below.

55.  **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of<br>property<br>Include street address or other<br>description such as Assessor<br>Parcel Number (APN), and type<br>of property (for example,<br>acreage, factory, warehouse, | Nature and<br>extent of<br>debtor's interest<br>in property | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|---|

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor | **Pettus Properties, LLC** | | | | Case number *(If known)* | |
|---|---|---|---|---|---|---|
| | Name | | | | | |

| | apartment or office building, if available. | | | | | |
|---|---|---|---|---|---|---|
| 55.1. | **125 Main Street West Hartselle, Alabama Commercial office building** | | | | | |
| | **212 Main Street West Hartselle, Alabama Commercial Office building** | | | | | |
| | **1521 Sparkman Street NW Hartselle, Alabama Commercial property** | | | | | |
| | **1550 Highway 31 NW Hartselle, Alabama Commercial office/warehouse** | | | | | |
| | **1523 Sparkman St. NW Hartselle, Alabama Vacant Lot** | Owner | $468,000.00 | Tax records | | $468,000.00 |
| 55.2. | **Bank Independenr Checking Account** | Owner | $95.00 | N/A | | $95.00 |

**56.** **Total of Part 9.**
Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
Copy the total to line 88.

| $468,095.00 |
|---|

**57.** **Is a depreciation schedule available for any of the property listed in Part 9?**
■ No
☐ Yes

**58.** **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 10: | Intangibles and intellectual property |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

| Part 11: | All other assets |
|---|---|

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

■ No.  Go to Part 12.
☐ Yes Fill in the information below.



Debtor **Pettus Properties, LLC**                    Case number *(If known)* _____
     Name

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $3,000.00 | |
| 88. **Real property.** *Copy line 56, Part 9*.......................................................> | | $468,095.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $3,000.00 | + 91b. $468,095.00 |
| 92. **Total of all property on Schedule A/B**. Add lines 91a+91b=92 | | $471,095.00 |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

| Fill in this information to identify the case: |
|---|

Debtor name    **Pettus Properties, LLC**

United States Bankruptcy Court for the:    NORTHERN DISTRICT OF ALABAMA

Case number (if known) _____

☐ Check if this is an
   amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals     **12/15**

| Part 1: | Summary of Assets |
|---|---|

1. **Schedule A/B: Assets-Real and Personal Property** (Official Form 206A/B)

     1a. **Real property:**
        Copy line 88 from *Schedule A/B*....................................................................................    $      **468,095.00**

     1b. **Total personal property:**
        Copy line 91A from *Schedule A/B*.................................................................................    $      **3,000.00**

     1c. **Total of all property:**
        Copy line 92 from *Schedule A/B*..................................................................................    $      **471,095.00**

| Part 2: | Summary of Liabilities |
|---|---|

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*...................    $      **264,000.00**

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

     3a. **Total claim amounts of priority unsecured claims:**
        Copy the total claims from Part 1 from line 5a of *Schedule E/F*.........................................    $      **0.00**

     3b. **Total amount of claims of nonpriority amount of unsecured claims:**
        Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*............................    +$      **16,000.00**

4. **Total liabilities** ...............................................................................................
    Lines 2 + 3a + 3b        $      **280,000.00**

FILED

**U.S. Bankruptcy Court**
**NORTHERN DISTRICT OF ALABAMA**

4/30/2019

**Joseph E. Bulgarella, Clerk**

**Fill in this information to identify the case:**

Debtor 1  Pettus Properties, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court  **NORTHERN DISTRICT OF ALABAMA**

Case number: **19–80926**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

### Part 1: Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | National Loan Investors, L.P. <br><br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☐ No <br> ☑ Yes. From whom?  Wachovia Bank |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| National Loan Investors, L.P. | 5619 N Classen Blvd |
| Name | Name |
| 5619 N CLASSEN BLVD <br> OKLAHOMA CITY, OK 73118 | |
| Contact phone    405–254–5466 | Contact phone |
| Contact email    gparsons@nli.com | Contact email |
| Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____ <br> MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

# EXHIBIT B-1

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:      0100 |

| | |
|---|---|
| 7. **How much is the claim?** | $     439733.74      **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>     Money Loaned |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>     **Nature of property:**<br>     ☑ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.<br>     ☐ Motor vehicle<br>     ☐ Other. Describe: _____<br><br>     **Basis for perfection:**      Mortgage _____<br><br>     Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>     **Value of property:**      $ _____<br>     **Amount of the claim that is secured:**      $   439733.74<br>     **Amount of the claim that is unsecured:**      $   0.00      (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>     **Amount necessary to cure any default as of the date of the petition:**      $   439733.74<br><br>     **Annual Interest Rate** (when case was filed)      5.00    %<br>     ☑ Fixed<br>     ☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410      Proof of Claim      page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies   $ _____

\* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    4/30/2019
                    _____
                    MM / DD / YYYY

/s/ Glenna Parsons
_____
Signature

Print the name of the person who is completing and signing this claim:

Name            Glenna Parsons
                _____
                First name    Middle name    Last name

Title           Bankruptcy Tech

Company         National Loan Investors, LP
                _____
                Identify the corporate servicer as the company if the authorized agent is a servicer

Address         5619 N CLASSEN BLVD
                _____
                Number   Street
                OKLAHOMA CITY, OK 73118
                _____
                City   State   ZIP Code

Contact phone   405–254–5436          Email   gparsons@nli.com

Official Form 410                    Proof of Claim                    page 3

Label Matrix for local noticing
1126-8
Case 19-80926-CRJ11
NORTHERN DISTRICT OF ALABAMA
Decatur
Tue Sep 24 15:06:38 CDT 2019

National Loan Investors LP
3030 N W Expressway Ste 1313
Oklahoma City, OK 73112-5466

Pettus Properties, LLC
PO Box 37
Hartselle, AL 35640-0037

U. S. Bankruptcy Court
400 Well Street
P. O. Box 2775
Decatur, AL 35602-2775

**Eddie Pruitt Ford
710 US-31
Hartselle, AL 35640

**Patricia Pettus
PO Box 35640-0037

**Tankersley's Service Center
200 Highway 31 North
Hartselle, AL 35640-4445

AJ Associates, Inc.
1550 Highway 31 NW
Hartselle, AL 35640-4430

AJ Associates, Inc.
PO Box 37
Hartselle, AL 35640-0037

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

Joyce White Vance
US Attorney General
1801 4th Ave North
Birmingham, AL 35203-2101

Loretta Lynch US Attorney General
US Dept. of Justice
950 Pennsylvania Ave NW
Washington, DC 20530-0009

Luther Strange
Alabama Attorney General
PO Box 300152
Montgomery, AL 36130-0152

National Loan Investors, L.P.
5619 N CLASSEN BLVD
OKLAHOMA CITY, OK 73118-4015

National Loan Investors, LP
c/o Jeffery J. Hartley, Esq.
PO Box 2767
Mobile, AL 36652-2767

Secretary of the Treasury
1500 Pennsylvania Ave., NW
Washington, DC 20220-0001

State of Alabama
Department of Revenue Legal Division
PO Box 320001
Montgomery, AL 36132-0001

The Robin's Nest
212 A/B Main St. West
Hartselle, AL 35640

Tower Loans
125 Main St. West
Hartselle, AL 35640-2415

U.S. Securities and Exchange Commission
Branch of Reorganization
Atlanta Regional Office
Suite 900
950 East Paces Ferry Road
Atlanta, GA 30326-1382

United States Attorney
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, AL 35203-2101

United States Bankruptcy Administrator
Northern District of Alabama
1800 Fifth Avenue North
Birmingham, AL 35203-2111

United States Bankruptcy Administrator
P.O. Box 3045
Decatur, AL 35602-3045

Mary Ena Heath
Maples Law Firm, PC
200 Clinton Avenue West
Suite 1000
Huntsville, AL 35801-4919

Richard M Blythe
United States Bankruptcy Administrator
PO Box 3045
Decatur, AL 35602-3045

Stuart M Maples
Maples Law Firm, PC
200 Clinton Avenue W.
Suite 1000
Huntsville, AL 35801-4919

End of Label Matrix
Mailable recipients    25
Bypassed recipients     0
Total                  25