UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA

In re:                                    )
                                          )
PETTUS PROPERTIES, LLC,                   )   Case No. 19-80926-11
                                          )
       Debtor.                            )

## OBJECTION TO CONFIRMATION OF THE PLAN OF REORGANIZATION OF PETTUS PROPERTIES, LLC, UNDER CHAPTER 11 OF TITLE 11, OF THE UNITED STATES CODE

COMES NOW National Loan Investors LP ("NLI"), a secured creditor in the above styled bankruptcy proceeding, by and through its undersigned counsel, and files this Objection to Confirmation of the Plan of Reorganization of Pettus Properties, LLC, under Chapter 11 of Title 11, of the United States Code. As grounds for its objection NLI states the following:

1.  On March 25, 2019 the Debtor filed a voluntary petition under the provisions of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). No trustee having been appointed, the Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code

2.  On or about October 29, 2004 SouthTrust Bank (the "Original Lender") made a loan to the Debtor in the original principal amount of $482,000 (the "Loan").

3.  In connection with the Loan, the Debtor executed and delivered to the Original Lender that certain promissory note dated October 29, 2004, in the original principal amount of $482,000 (the "Note"). An Allonge was executed by Wachovia Bank, National Association, successor by merger to SouthTrust Bank, formerly known as SouthTrust Bank, National Association to National Loan Investors, L.P. on May 23, 2006.

4.  The Note was secured by, inter alia, the following:

(a) That certain Mortgage dated as of May 3, 2002 and executed by the Debtor in favor of the Original Lender (the "Mortgage"); the Mortgage encumbers the Debtor's asset known as 212 West Main Street in Hartselle, Alabama. An Assignment of Mortgage and Other Recorded Documents was executed by Wachovia Bank, National Association, successor by merger to SouthTrust Bank, formerly known as SouthTrust Bank, National Association in favor of National Loan Investors, L.P. pursuant to a certain Asset Sale Agreement dated May 9, 2006.

(b) That certain subsequent Mortgage dated as of August 30, 2002 and executed by the Debtor in favor of the Original Lender (the "Second Mortgage"); the Second Mortgage encumbers the Debtor's assets known as real property known as three commercial buildings at 1550 Hwy 31 North in Hartselle, Alabama, 120 W. Main Street in Hartselle, Alabama, and 212 W. Main Street in Hartselle, Alabama (other assets were included in the Second Mortgage but have since been released). (Collectively, the Mortgage and Second Mortgage are hereinafter referred to as the "Collateral".)

5. Prior to the filing of its bankruptcy case, the Debtor defaulted under the terms of the Loan documents by virtue of, *inter alia*, and failed to pay off the Loan in full when it matured on June 1, 2018. As a consequence of the Debtor's default with respect to the Loan, on February 20, 2019, the Lender initiated an action to recover on the Note and to foreclose the Collateral. The Debtor's Chapter 11 filing was shortly after the initiation of the foreclosure case.

6. Pursuant to the Plan, and with respect to the Lender's now fully matured claim, the Debtor proposes the following:

(a) The Debtor is contemplating filing an objection to the amount of this claim;

(b) The Debtor seeks to reduce the interest rate on this claim to 4.00%, per annum.

(c) The Debtor proposes to pay this claim through interest-only payments for eighteen (18) months in the amount of $1,465.78, commencing on the Effective Date of the Plan. This payment to be paid direct by the Debtor. Any other income after expenses will be used to repair the property and market it for sale, following which the Debtor will apply the proceeds to payment of the debt to National Loan Investors, LP.

## The Plan is Not Fair and Equitable

7. Section 1129(b)(1) of the bankruptcy code provides that a debtor may "cram down" its plan over the objection of a creditor "if the plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. Sec. 1129(b)(1). Section 1129(b)(2) then sets forth requirements which must be met for a plan to be "fair and equitable." A plan which does not meet the standards set forth in Sec. 1129(b)(2) cannot be "fair and equitable."

8. As per section 1129(b)(2)(A), in terms of an allowed claim, a plan must provide that:

(A) With respect to a class of secured claims, the plan provides –

   (i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

   (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

9. In judging whether a plan is fair and equitable, courts should look at the plan as a whole and judge it by a totality of circumstances. *See In re D&F Construction, Inc.* 865 F.2d 673,

675 (5th Cir. 1989).

10. In the current case, the Debtor is proposing that the former equity holders retain their ownership interest in the Debtor while, at the same time, stretching out the payments to NLI and the unsecured creditors for years. No provision is made for NLI after eighteen (18) months of interest-only payments. For Class 2 claimants, the Debtor proposes to begin payments only if there are net profits over a five (5) year period.

11. Because the Plan is proposing to allow the equity holders to maintain their equity interests in the Debtor while, at the same time, allowing the Debtor to refrain from making principal payments to NLI following the confirmation date, the plan is not fair and equitable and confirmation should be denied.

## The Plan is Not Feasible

12. The Plan does not contain adequate information with respect to the means by which the Debtor will implement and fund its Plan. Nonetheless, in order to meet the feasibility requirement of the Bankruptcy Code based on future income, "[p]rojections of income necessary to finance a plan of reorganization must be based on concrete evidence of financial progress, and must not be speculative, conjectural, or unrealistic." *In re Cherry,* 84 B.R. 134, 137-38 (Bankr. N.D. Ill. 1988).

13. In other words, a requirement for any confirmable chapter 11 plan is that the proposed terms and implementation of such terms must be feasible. *See* Section 1129(a). To establish feasibility the Court must find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan…" *In re D & G Investments of W. Florida, Inc.,* 342 B.R. 882, 885-86

(Bankr. M.D. Fla. 2006) (citing Section 1129(a)(11). The proponent of the plan must show that the plan "offers at least a reasonable prospect of success and … is workable." *Id.* (citing *In re Landmark at Plaza Park, Ltd.,* 7 B.R. 653 (Bankr.D. N.J. 1980); *In re Haas,* 162 F.3d 1087, 1090 (11th Cir. 1998).

14. The Plan seems to be based on the future success of the Debtor and its ability to somehow generate profits. Despite this dependence, the Plan fails to provide a detailed analysis of the Debtor's likelihood of success in the future, nor does the Plan provide forecasts of the Debtor's anticipated future cash flows. Due to the lack of information regarding the Debtor's probability of success in the future, a meaningful analysis of the feasibility of the Plan is impossible at this time. Therefore, NLI objects to confirmation of the Plan.

## The Plan Is Not In The Best Interests of the Creditors.

15. In order for a plan to be confirmable, the Code imposes the "best interest of creditors test." "The 'best interest of creditors' test provides in its simplest terms that so long as a dissenting creditor receives as much as it would receive in a Chapter 7 liquidation case, the test is met." *In re Johnson,* 101 B.R. 307, 308 (Bankr. M.D. Fla. 1989). Thus, the best interest of the creditors test essentially provides that claimholders who are impaired, as defined by the Code, under a plan must be paid the present value of their respective claims as of the effective date of the plan, and that value must be greater than or equal to what those claimholders would respectively receive in a Chapter 7. *See, generally, in re Cassis Bistro, Inc.,* 188 B.R. 472, 475 (Bankr. S.D. Fla. 1995); *In re Tranel,* 940 F. 2d 1168 (8th Cir. 1991).

16. As stated above, the Plan provides no objective projections to allow creditors to assess the Debtor's future. Additionally, the Plan does not contain a liquidation analysis. As a

result, creditors (including NLI) cannot determine whether the Plan will meet the best interests of creditors. Finally, the Plan calls for interest-only payments to NLI carried over a substantial period of time, with NLI not receiving their first principal payment for an unknown time (if ever). Under a chapter 7 liquidation of the Debtor's assets, NLI would be paid in full much faster than the proposed Plan payments. Because of the time value of money, NLI would receive a greater benefit by liquidation of the Debtor's assets. As such, the Plan should be denied since they fail to provide adequate information and fail to satisfy the best interests of the creditors test.

17. In addition to the above, NLI objects to confirmation of the Plan on the following grounds:

(i) At the time of filing the Objection the debt to NLI is $468,888.06 (not including continuing interest, attorney's fees and costs). The Debtor's schedules state that the Collateral is worth $468,000.00. Apparently, there is no equity. The Loan is 558 days past due. See the attached **Exhibit "A"**.

(ii) It is not fair and equitable to reduce the interest rate on the Loan of this nature. The proposed interest rate of 4.00% is not the applicable market rate as determined by applicable confirmation standards. Given that there exists an efficient market for commercial loans of the type being proposed herein, the interest rate should be that which is comparable to which a borrower in the Debtor's circumstances would be able to obtain in the open market. That rate is much greater than 4.00%.

(iii) The Debtor's proposed payments to NLI for a period for eighteen (18) months in the amount of $1,465.78 effectively creates an interest-only loan to the Debtor and, as set forth above, subordinates the Lender to equity. Moreover, the Debtor has demonstrated no ability by

which the payment can or will ever be made. Any deterioration or decline in value of the Collateral is not accounted for or even considered. NLI is not adequately protected nor does the Plan make provision for such.

(iv) The Plan contemplates paying the members of the Debtor LLC (Mr. and Mrs. Pettus) (Class 3) a salary while maintaining full ownership. The amount of the salary is undisclosed. During this period, neither NLI or the unsecured creditors will be paid in full. This is a violation of the Absolute Priority Rule.

## RESERVATION OF RIGHTS

NLI hereby reserves all rights and claims with respect to all issues pertaining to the confirmation of the proposed Plan, including but not limited to further objections to the same, as additional grounds for objecting to the Plan exist.

## CONCLUSION

As set forth above, the Plan does not comply with the Bankruptcy Code and therefore cannot be confirmed pursuant to Sections 1129(a) and/or 1129(b). Consequently, the Debtor's Plan is due to be rejected.

WHEREFORE, premises considered, National Loan Investors L.P. respectfully requests the entry of an order: (i) denying confirmation of the Plan; (ii) dismissal of the case, and (iii) for such other and further relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this the 15th day of January, 2020.

/s/Jeffery J. Hartley
JEFFREY J. HARTLEY        (HARTJ4885)
Attorney for National Loan Investors LP

OF COUNSEL:
HELMSING, LEACH, HERLONG, NEWMAN & ROUSE, P.C.
Post Office Box 2767
Mobile, Alabama 36652
Telephone: (251) 432-5521
Facsimile: (251) 432-0633

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of January, 2020, the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties to this proceeding or serve a copy by U.S. Mail.

Pettus Properties, LLC. (Via U.S. Mail)
PO Box 37
Hartselle, AL 35640
*Debtor*

Stuart M. Maples (Via CM/ECF System)
Mary Ena Heath (Via CM/ECF System)
*Attorneys for Debtor*

Richard M. Blythe (Via CM/ECF System)
*Bankruptcy Administrator*

/s/Jeffery J. Hartley
Of Counsel

4844-6189-3297, v. 1

National Loan Investors, L.P.  
5619 N Classen Blvd  
Oklahoma City OK 73118-4015  
(800)729-3278



**Payoff Statement**

Loan Number: 45500100  
Investor: 01 100 921

**Property Address**  
1550 HWY 31 NORTH  
HARTSELLE AL 35640

**Borrower**  
PETTUS PROPERTIES, LLC  
DON & PATRICIA PETTUS  
P.O. BOX 37  
HARTSELLE AL 35640-0037

PETTUS PROPERTIES, LLC  
DON & PATRICIA PETTUS  
P.O. BOX 37  
HARTSELLE AL 35640-0037

## Account Information

| | |
|---|---|
| Loan Type: | Conventional |
| Interest Calculation Method: | Conventional Loan - 360 |
| Estimated Payoff Date: | 12/01/19 |
| Due Date Next Payment: | 08/01/18 |
| Current Interest Rate: | 5.00000 |
| Daily Interest Rate: | .00013889 |
| Daily Interest Amount: | 57.82 |
| Number of Days Interest Due: | 518 |

### Balances

| | |
|---|---|
| T&I Balance: | .00 |
| Delinquent Late Charges: | 173.46 |
| Returned Check Balance: | .00 |
| Miscellaneous Fee Balance: | 16,324.32 |
| Unapplied Balance: | 1,530.84 |
| Subsidy Balance: | .00 |
| Deferred Principal Balance: | .00 |
| Calc Late Charges (Due Date to Payoff Date): | 1,387.68 |

## Amounts for Payoff

| | |
|---|---|
| Principal Balance: | 416,300.18 |
| + Interest Due: | 29,950.76 |
| − T&I Balance: | .00 |
| − Subsidy Balance: | .00 |
| + Returned Check Charges Due: | .00 |
| + Total FCL/Bank Fees Due: | .00 |
| + MIP/PMI Payment Due: | .00 |
| + Misc. - Legal Fees & BPO | 16,324.32 |
| **Total Amount Due** | **462,575.26** |

**Important Information**

# National Loan Investors, L.P.
## Amortization Schedule

| | |
|---|---|
| Name On Loan: | Pettus Properties, LLC - NLI#45500100 |
| Principal Balance: | $462,575.26 |
| Interest Rate: | 5.00000 % |
| Payment Frequency: | Monthly |
| Term In Months: | 12 *M+h Bellova* |
| Beginning P&I Amount: | $2,000.00 |
| 1st Payment Due Date: | 01/01/2020 |

| Payment Number | Payment Due Date | Interest Amount | Principal Amount | Payment Amount | Principal Balance |
|---|---|---|---|---|---|
| 1 | 01/01/2020 | $1,927.40 | $72.60 | $2,000.00 | $462,502.66 |
| 2 | 02/01/2020 | $1,927.09 | $72.91 | $2,000.00 | $462,429.75 |
| 3 | 03/01/2020 | $1,926.79 | $73.21 | $2,000.00 | $462,356.54 |
| 4 | 04/01/2020 | $1,926.49 | $73.51 | $2,000.00 | $462,283.03 |
| 5 | 05/01/2020 | $1,926.18 | $73.82 | $2,000.00 | $462,209.21 |
| 6 | 06/01/2020 | $1,925.87 | $74.13 | $2,000.00 | $462,135.08 |
| 7 | 07/01/2020 | $1,925.56 | $74.44 | $2,000.00 | $462,060.64 |
| 8 | 08/01/2020 | $1,925.25 | $74.75 | $2,000.00 | $461,985.89 |
| 9 | 09/01/2020 | $1,924.94 | $75.06 | $2,000.00 | $461,910.83 |
| 10 | 10/01/2020 | $1,924.63 | $75.37 | $2,000.00 | $461,835.46 |
| 11 | 11/01/2020 | $1,924.31 | $75.69 | $2,000.00 | $461,759.77 |
| 12 | 12/01/2020 | $1,924.00 | $461,759.77 | $463,683.77 | $0.00 |
| **Yearly Sub-Totals:** | | **$23,108.51** | **$462,575.26** | | |
| **Totals:** | | **$23,108.51** | **$462,575.26** | | |

\* \* \* \* \* \* \* \* \*  Last Payment Amount :  463,683.77  \* \* \* \* \* \* \* \* \*

\* Denotes an Interest Only Payment